UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

MARICELA MARIN-SANTIAGO, JOSUE
GARCIA-GARCIA, DAVID MARIN-JOSE,
DIONICIO MARIN-JOSE, and MOISES
SARMIENTO-JOSE,

        Plaintiffs,

v.

GUMARA CANELA, DANIEL CANELA,
D.CANELA RESOURCES, LLC; and
ISMAEL PEREZ,

        Defendants.

Civil Action No.:

## COMPLAINT

## I. PRELIMINARY STATEMENT

1. Plaintiffs are migrant laborers lured from their homes in Mexico into forced labor by Defendants' false promises of lawful and gainful employment as H-2A Visa workers.

2. Defendants abused the government's H-2A Visa program to transport Plaintiffs to South Georgia, where Defendants forced Plaintiffs to work in dangerous conditions without pay, all while Defendants housed Plaintiffs in substandard living conditions and subjected Plaintiffs to ongoing emotional abuse. As a result of Defendants' actions, Plaintiffs suffered significant economic and psychological harm.

3. Plaintiffs now bring this action to vindicate their rights under the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA"), 18 U.S.C. § 1595; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.; and Georgia contract law.

4.    Plaintiffs seek unpaid wages, statutory liquidated damages, general and special damages, punitive damages, emotional distress damages, damages arising from Defendants' breach of contract, pre- and post-judgment interest, costs, and reasonable attorney's fees.

## II. JURISDICTION AND VENUE

5.    This Court has jurisdiction of this action under:

a)    28 U.S.C. § 1331 (Federal Question);

b)    28 U.S.C. § 1337 (Interstate Commerce);

c)    29 U.S.C. § 216(b) (FLSA);

d)    18 U.S.C. § 1595(a) (TVPRA); and

e)    28 U.S.C. § 1367 (Supplemental Jurisdiction).

6.    This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III, Section II of the U.S. Constitution.

7.    Venue is proper in this district and division under 28 U.S.C. § 1391(b)-(d) and S.D. Ga. Local Rule 2.1, because a substantial part of the events or omissions giving rise to the claim occurred in this district and division, and Defendants Gumara Canela, Daniel Canela, and Ismael Perez reside in this district and division.

## III. PARTIES

<u>Plaintiffs</u>

8.    At all times relevant to this action, Plaintiffs Maricela Marin-Santiago, Josue Garcia-Garcia, David Marin-Jose, Dionicio Marin-Jose, and Moises Sarmiento-Jose were citizens of Mexico admitted into the United States on a

temporary basis to work for Defendant Canela Resources under the auspices of the federal H-2A Program.[1]

9. Plaintiffs are from a rural, impoverished area of Mexico where there are few opportunities for gainful employment, and no opportunities for earning wages comparable to those promised under the H-2A Program.

10. As Defendants' employees, Plaintiffs handled or otherwise worked on goods or materials that had been moved or produced for interstate commerce.

11. Defendants employed Plaintiffs for the harvest and maintenance of blueberries and pine straw for sale in interstate commerce.

12. Defendants transported Plaintiffs from Mexico to Georgia to work.

13. Plaintiffs attached their signed FLSA consent forms as Exhibit A.

<u>Defendant D.Canela Resources, LLC</u>

14. Defendant D.Canela Resources, LLC ("Canela Resources"), a Georgia limited liability company, is an H-2A Labor Contractor in that it recruited, solicited, hired, employed, furnished, housed, and transported H-2A workers; and is not a fixed-site employer, an agricultural association, or an employee of a fixed-site employer or agricultural association.[2]

15. At all times relevant to this action, Defendant Canela Resources operated in South Georgia, including Atkinson County, Bacon County, Coffee County, and Pierce County.

16. The Articles of Organization for D.Canela Resources, LLC list Defendant Gumara Canela as Organizer.

---

[1] *See generally* 8 U.S.C. § 1188; 20 C.F.R. § 655.0, *et seq.*
[2] *See* 20 C.F.R. § 655.103(b) (defining an H-2A Labor Contractor).

17.   Canela Resources' Registered Agent, Maria Leticia Patricio, can be served at

1931 GA Hwy 32 E, Douglas, GA 31533.

18.   At all times relevant to this action, Defendant Canela Resources had a place of business

in the U.S. and a means by which it could be contacted for employment, had the ability to

supervise and control the work of Plaintiffs, and had a valid Federal Employer

Identification Number.

19.   At all times relevant to this action, Canela Resources was an employer of Plaintiffs under

the FLSA, in that it suffered or permitted Plaintiffs to work.[3]

<u>Defendants Gumara Canela and Daniel Canela</u>

20.   Defendants Gumara Canela and Daniel Canela reside in Bacon County, Georgia.

21.   Defendants Gumara Canela and Daniel Canela can be served at

773 Pine Level Church Rd., Alma, Georgia 31510.

22.   At all times relevant to this action, Defendant Gumara Canela owned, acted as a

day-to-day manager of, and had operational control over Defendant Canela Resources.

23.   At all times relevant to this action, Defendant Daniel Canela acted as a day-to-day

manager of, and had operational control over, Defendant Canela Resources.

24.   At all times relevant to this action, Defendants Gumara and Daniel Canela had the right

to control the manner and means by which Plaintiffs performed their work, including the

power to hire and fire Plaintiffs and control over the conditions of employment.

25.   Upon information and belief, Gumara Canela and husband Daniel Canela ("the Canelas")

jointly owned and operated D.Canela Resources, LLC.

---

[3] *See* 29 U.S.C. § 203(g) (defining employ to include to suffer or permit to work).

26.     At all times relevant to this action, the Canelas were employers of Plaintiffs under the FLSA, in that they suffered or permitted Plaintiffs to work.[4]

Defendant Ismael Perez

27.     Defendant Ismael Perez ("Perez") resides in Atkinson County, Georgia.

28.     Defendant Perez can be served at 315 Main Street S, Pearson, Georgia 31642.

29.     At all times relevant to this action, Defendant Perez was a farm labor contractor who, for money or other valuable consideration paid or promised to be paid, recruited, hired, furnished, and transported seasonal agricultural workers in South Georgia, including Atkinson County, Bacon County, Coffee County, and Pierce County.

30.     Upon information and belief, at all times relevant to this action, Defendant Perez operated as a farm labor contractor without a Certificate of Registration from the U.S. Department of Labor ("USDOL").

31.     At all times relevant to this action, Ismael Perez was an employer of Plaintiffs under the FLSA, in that Perez suffered or permitted Plaintiffs to work.[5]

## IV. STATUTORY AND REGULATORY STRUCTURE OF THE H-2A PROGRAM

32.     The implementing agencies and federal regulations allowing agricultural employers to bring foreign workers to the United States are commonly referred to as the "H-2A Program."

33.     An agricultural employer in the United States may bring temporary foreign workers ("H-2A workers") to the United States if the U.S. Department of Labor ("USDOL") certifies that: (1) there are not enough U.S. workers to perform the job, and (2) the

---

[4] *Id.*
[5] *Id.*

employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed.[6]

34.    Under the H-2A Program, employers must file a temporary labor certification application with the USDOL's Employment and Training Administration.[7] The application must include a job offer, known as a "job order," which is used in the recruitment of both U.S. and H-2A workers and becomes the work contract of the employed workers.[8]

35.    If an employer's job order meets the minimum regulatory requirements and is otherwise valid, U.S. worker availability is tested using the interstate Employment Service System[9] and by the employer's own hiring efforts. If it is determined that sufficient U.S. workers are not available to fill the jobs, the USDOL certifies the need for temporary foreign workers, and the Department of Homeland Security ("DHS") issues H-2A visas for the number of job opportunities requested by the employer and not filled by U.S. workers.

36.    The job order must comply with the applicable H-2A regulations that establish the minimum benefits, wages, and working conditions that must be offered to avoid adversely affecting similarly employed U.S. workers.[10]

37.    The H-2A regulations require, in part, the following:

a)    If the worker is paid by the hour, the employer must pay the worker, at least, the Adverse Effect Wage Rate ("AEWR"), the prevailing hourly wage rate, the prevailing piece rate, the agreed-upon collective bargaining rate, or the Federal or State

---

[6] 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1).
[7] 20 C.F.R. § 655.130.
[8] *See* 20 C.F.R. § 655.103(b) (definition of "work contract").
[9] Employment Service (ES) refers to the national system of public ES offices described under the Wagner-Peyser Act. Employment services are delivered through a nationwide system of one-stop centers and are managed by State Workforce Agencies (SWA's), and funded by the USDOL. *See* 20 C.F.R. § 651.10, (definition of "Wagner-Peyser Act Employment Service").
[10] 20 C.F.R. § 655.121(a)(3).

minimum wage rate, in effect at the time work is performed, whichever is highest, for every hour or portion thereof worked during a pay period.[11]

b)  If the worker is paid on a piece-rate basis, and the worker's earnings do not result in average earnings of, at least, the AEWR, then the worker's pay must be supplemented so that the worker's earnings are, at least, as much as the worker would have earned had the worker been paid the AEWR.[12]

c)  The employer either must provide each worker with three meals per day or must furnish free and convenient kitchen facilities to the workers so that the workers can prepare their meals. Where the employer provides the meals, the job order must state the charge, if any, to the worker for such meals.[13]

d)  The employer must provide housing to the workers, free of charge, and the housing must meet federal and local standards.[14]

e)  The employer must keep accurate and adequate records with respect to the workers' earnings, including but not limited to: field tally records, supporting summary payroll records, and records showing the nature and amount of the work performed; the number of hours of work offered each day by the employer; the hours actually worked each day by the worker; the time the work began and ended each workday; the rate of pay (both piece rate and hourly, if applicable); the worker's earnings per pay period; the worker's home address; and the amount of and reasons for any and all deductions taken from the worker's wages.[15]

---

[11] 20 C.F.R. § 655.122(l).
[12] 20 C.F.R. § 655.122(l)(2)(i).
[13] 20 C.F.R. § 655.122(g).
[14] 20 C.F.R. § 655.122(d).
[15] 20 C.F.R. § 655.122(j)(1).

f)   The employer must furnish to each worker, on or before each payday, a written statement that includes, among other items: the worker's total earnings for the pay period; the worker's hourly rate and/or piece rate of pay; the hours of employment offered to the worker; the hours actually worked by the worker; an itemization of all deductions made from the worker's wages; and, if piece rates are used, the units produced daily.[16]

g)   The employer must provide to each H-2A worker, no later than the time at which the worker applies for the visa, a copy of the work contract between the employer and the worker in a language understood by the worker as necessary or reasonable.[17]

## V. STATEMENT OF FACTS

### Partnership between Perez and the Canelas

38.   In 2018, Ismael Perez recruited and hired Plaintiffs Maricela Marin-Santiago, David Marin-Jose, and Dionicio Marin-Jose, from their hometowns in Mexico, to work for the Perez Family's H-2A contracting business, Primicia Harvesting, LLC., as H-2A Visa workers.

39.   Ismael Perez's daughter, Yesenia Perez, operated as a foreign labor contractor through the trade name Primicia Harvesting.

40.   On or around April 30, 2020, the USDOL debarred labor contractor Yesenia Perez, dba Primicia Harvesting, from participating in the H-2A Program.

41.   Upon information and belief, Ismael Perez entered into a business partnership with the Canelas to use the H-2A program to circumvent Primicia Harvesting's debarment and jointly recruit, hire, and employ a group of H-2A workers, including Plaintiffs.

---

[16] 20 C.F.R. § 655.122(k).
[17] 20 C.F.R. § 655.122(q).

42.     In 2020, Defendant Ismael Perez, as an agent of the partnership between Perez and the

        Canelas, recruited Plaintiffs from Mexico to work for Perez and the Canelas as H-2A

        Visa workers in the United States.

<u>The Employment Contract</u>

43.     On or around September 11, 2020, Defendant Canela Resources submitted a job order

        ("the 2020-21 Job Order") to the Georgia Department of Labor ("GADOL"), and an

        Application for Temporary Employment Certification to the USDOL.

44.     The approved 2020-21 Job Order, (Attached as Exhibit B), included, but was not limited

        to, the following terms:

        a)      A prohibition against the employer and its agents from seeking or receiving

        payment from any worker for application fees and recruitment costs;[18]

        b)      Work to begin on October 10, 2020, and continue until February 15, 2021;

        c)      Anticipated hours of work of at least 35 hours per week;

        d)      Job duties of "planting blueberries" and other tasks related to the maintenance of

                blueberry fields;

        e)      Anticipated seven-hour workday beginning at 8:00 AM and ending at 3:00 PM;

        f)      An hourly wage of not less than the AEWR, or $11.71 per hour, and a piece rate

                of $0.16 per plant;

        g)      A weekly pay period;

        h)      Free housing that met local, state and federal requirements, including adequate

                kitchen facilities with utensils to allow workers to cook their own meals.

        i)      Weekly trips to a food store and a laundry facility; and

---

[18] *See* 20 C.F.R. § 655.135(j).

j)     Guaranteed employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in the 2020-21 Job Order, or the monetary equivalent if the hours were not offered.

45.   The terms and conditions of the 2020-21 Job Order, together with the requirements of 20 C.F.R. § 655, constituted a job offer.

46.   The job offer, when accepted, created a work contract between Defendants and each Plaintiff who accepted the offer.

47.   The work contract at issue here incorporates a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws" including the FLSA and the TVPRA.[19]

48.   By promising to pay the federally mandated wage rate, Defendants also promised to pay that wage free and clear without deductions for items for the employers' benefit or without reducing the workers' wages by shifting costs to those workers.

<u>Recruitment</u>

49.   Defendants recruited Plaintiffs from their hometowns in Mexico to work for Defendants under the 2020-21 Job Order terms.

50.   During recruitment, Defendant Perez, as an agent of his partnership with the Canelas, promised Plaintiffs work in the harvest of blueberries at an hourly wage rate determined by the 2020-21 Job Order.

51.   Plaintiffs reasonably believed they would earn a wage rate at or above $11.00 per hour, similar to the previous H-2A contract rate earned by Plaintiffs Maricela Marin, David Marin, and Dionicio Marin in 2018.

---

[19] *See* 20 C.F.R. § 655.135(c).

52.     The applicable adverse effect wage rate ('AEWR") for 2020 to February 22, 2021, was $11.71 per hour.[20]

53.     The terms and conditions of the 2020-21 Job Order, together with the requirements of 20 C.F.R. § 655, constituted an offer of employment.

54.     Relying on Defendants promises of gainful employment under the terms of the 2020-21 Job Order, Plaintiffs accepted the offer of employment.

55.     The offer of employment, when accepted, created an employment contract between Defendants and each Plaintiff who accepted the offer.

56.     Plaintiffs' native language is Spanish, and they cannot read English.

57.     Defendants failed to give Plaintiffs a copy of the employment contract translated in "a language understood by the worker[s]," as required by 20 C.F.R. § 655.103(q).

<u>Pre-Employment Expenses</u>

58.     Plaintiffs incurred various immigration, processing, and travel expenses in order to come to work for Defendants.

59.     Before traveling to Georgia, Defendant Gumara Canela contacted Plaintiffs in Mexico, and required, as a condition of hire, that each Plaintiff pay a sum of money to her for travel to Georgia, visa expenses, and recruitment fees.

60.     Defendant Ismael Perez assured Plaintiffs they would be reimbursed for the monies paid to Defendant Gumara Canela.

61.     Plaintiffs took out loans to pay the fees required by Defendants, and to pay additional undisclosed travel expenses.

---

[20] *See* 84 Fed. Reg. 94422 (Dec. 19, 2019).

62.    After making payments to Defendants, Plaintiffs still had to pay additional expenses in order to travel to Georgia to work.

63.    In order to comply with Defendants' hiring process, Plaintiffs traveled, at their own expense, from their homes to the U.S. Consulate in Mexico for the processing of their H-2A Visas.

64.    Plaintiffs incurred expenses for lodging during their travel from their homes to the U.S. Consulate.

65.    Plaintiffs also incurred expenses for lodging while Plaintiffs completed visa application forms, attended consular interviews, and waited for the visa applications to be processed and issued.

66.    At the U.S. border near Brownsville, Texas, each Plaintiff paid a $6 fee to the U.S. Customs and Border Protection ("CBP") for the issuance of an Arrival/Departure Record (I-94), which is required to enter the U.S.

67.    Plaintiffs entered the U.S. on or around December 4, 2020.

68.    Plaintiffs incurred travel-related expenses on their journey to Alma, Georgia from the U.S. Consulate in Mexico.

69.    On or around December 5, 2020, Plaintiffs arrived in Alma, Georgia.

70.    The expenses described in Paragraphs 58-59, 61-66, and 68 were costs necessary to enter the U.S. as an H-2A worker and were incurred for the benefit of the Defendants, as defined by 29 C.F.R §§ 531.32(c) and 778.217.

71.    Plaintiffs incurred the expenses described in Paragraphs 58-59, 61-66, and 68 before receipt of their first paychecks.

72.   Defendants did not reimburse Plaintiffs for any of the expenses described in Paragraphs 58-59, 61-66, and 68 in the first workweek.

73.   The employment contract at issue here incorporates a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws" including the FLSA and the TVPRA.[21]

74.   By promising to pay the federally-mandated AEWR, Defendants also promised to pay that wage free and clear without deductions for items for the employers' benefit or without reducing the workers' wages by shifting costs to those workers.

75.   Defendants' failure to reimburse Plaintiffs for these expenses in the first workweek brought Plaintiffs' wages below the federal minimum wage and the AEWR.

<u>Unlawful Conduct with Respect to Documents</u>

76.   Defendants arranged for Plaintiffs to be transported from the U.S. Consulate in Mexico to Alma, Georgia.

77.   On or around December 4, 2020, after crossing the U.S.-Mexico border, the Canela Defendants' agents confiscated Plaintiffs' immigration and travel documents.

78.   On December 5, 2020, Plaintiffs arrived at the Canela housing facility in Alma, where Gumara Canela returned the Plaintiffs' passports but retained their CBP issued I-94s and told the Plaintiffs that she was retaining their I-94s to prevent them from fleeing.

<u>Wages and Working Conditions</u>

79.   On or around December 5, 2020, Gumara Canela, in contradiction to the terms previously agreed to in the 2020-21 Job Order, gathered Plaintiffs to announce changes to the terms and conditions of employment, including that:

---

[21] *See* 20 C.F.R. § 655.135(e).

    a)  The first week of work would be unpaid;

    b)  Workers would be paid below the rate promised in the 2020-21 Job Order;

    c)  Deductions would be made to workers' pay for Defendants' expenses;

    d)  Workers would receive no reimbursements for pre-employment expenses;

    e)  Defendants reserved the right to extend the length of a workers' contract without the consent of the worker; and

    f)  Workers were not allowed visitors to the housing facility.

80.    Defendant Gumara Canela verbally abused Plaintiffs in response to Plaintiffs' protests to the changes in the terms and conditions of the contract.

81.    Upon arrival, Plaintiffs discovered defects with the housing conditions, including:

    a)  Kitchen and sleeping areas covered in dust, insect and animal carcasses, and rodent feces;

    b)  No pans or other tools Plaintiffs could use to prepare meals;

    c)  A stove that leaked flammable gas; and

    d)  No running water.

82.    Upon arrival on December 5, 2020, Plaintiffs could not shower and had no food to prepare meals for that evening or the following day.

83.    Defendants failed to provide Plaintiffs adequate access to a grocery store in order for them to prepare their meals.

84.    On December 6, 2020, Defendants ordered Plaintiffs Josue Garcia-Garcia, David Marin-Jose, Dionicio Marin-Jose, and Moises Sarmiento-Jose ("the Male Plaintiffs") to manual labor in a blueberry field.

85.   On December 6, 2020, the Male Plaintiffs worked in the blueberry field from before sunrise until nightfall.

86.   On December 6, 2020, the Male Plaintiffs worked without food or water until around 4:00 PM.

87.   On December 6, 2020, Defendants ordered Plaintiff Maricela Marin-Santiago to perform maintenance on the housing facility and prepare meals from before sunrise until around 4:00 PM.

88.   Facilities maintenance and meal preparation were not job duties listed in the 2020-21 Job Order or disclosed to Plaintiffs during recruitment.

89.   On December 6, 2020, Defendants did not allow Plaintiff Maricela Marin-Santiago to take breaks for rest or meals until after 4:00 PM.

90.   As a result of prolonged physical labor without food or water, Plaintiffs suffered a physical impact, including thirst, hunger, dry mouth, dry lips, headache, fatigue, and/or dizziness.

91.   As a result of the painful and/or uncomfortable physiological symptoms Plaintiffs experienced from prolonged physical labor without food or water, Plaintiffs suffered emotional distress, including stress, fear of serious injury, worry and/or anxiety.

92.   Throughout Plaintiffs' employment, Defendant Gumara Canela verbally abused Plaintiffs and their coworkers, including telling workers she did not care if they ate.

93.   On December 7, 2020, Defendants tasked all Plaintiffs to bale pine straw from before sunrise to nightfall without adequate breaks for lunch or rest.

94.   Baling pine straw was not a job duty listed in the 2020-21 Job Order or disclosed to Plaintiffs during recruitment.

95.    On December 8, 2020, Defendants tasked the Male Plaintiffs to bale pine straw from before sunrise to nightfall without adequate breaks for lunch or rest.

96.    On December 8, 2020, Defendants ordered Maricela Marin-Santiago to perform grounds maintenance at the housing site and to prepare and serve meals.

97.    On December 8, 2020, Ms. Marin-Santiago began work before sunrise, continued to work until around 5:00 PM, when she was allowed to eat, and then returned to work serving workers at around 7:00 PM.

98.    Grounds maintenance, preparing meals, and serving meals were not job duties listed in the 2020-21 Job Order or disclosed to Plaintiffs during recruitment.

99.    Defendants failed to pay Plaintiffs for any compensable hours worked.

100.   Since Defendants did not pay Plaintiffs any wages at all, Plaintiffs' weekly earnings fell below the applicable federal minimum wage and the contract's AEWR.

101.   Defendants did not contact Plaintiffs to arrange payment of unpaid wages.

102.   Defendants did not offer the total number of work hours equal to at least three-fourths of the workdays, as required by 20 C.F.R. § 655.122(i).

103.   Defendants did not supplement Plaintiffs' wages as required by 20 C.F.R. § 655.122(i).

104.   At all relevant times, all Defendants supervised Plaintiffs and controlled the manner and means by which Plaintiffs worked while in the blueberry and pine straw fields.

<u>Human Trafficking Scheme</u>

105.   Defendants recruited Plaintiffs in Mexico.

106.   Plaintiffs are poor and from impoverished communities with limited opportunities for employment and education.

107.    Defendants sought out workers from impoverished backgrounds and limited understanding of the U.S. legal system.

108.    During recruitment, Defendants knowingly made false promises to Plaintiffs about the wages and conditions of the offered employment.

109.    Defendants required Plaintiffs to pay substantial recruitment fees, which Defendants promised would cover travel expenses and would be reimbursed upon arrival to Georgia.

110.    Plaintiffs took out loans to pay the required fees and expenses.

111.    On behalf of himself and the other Plaintiffs, Plaintiff Moises Sarmiento-Jose told Defendant Gumara Canela they would need time to take out loans to pay the pre-employment fees Defendants charged.

112.    After making payments to Defendants, Plaintiffs still had to pay additional travel expenses in order to travel to Georgia to work.

113.    Once in the United States, Defendants confiscated Plaintiffs' passports to prevent them from escaping.

114.    Defendant Gumara Canela withheld Plaintiffs' I-94 travel documents and told Plaintiffs they could not travel freely in the United States without their I-94s because their passports were worthless without the I-94s.

115.    Plaintiffs reasonably believed Gumara Canela's statements.

116.    When Plaintiffs arrived in Georgia, Defendants housed Plaintiffs in substandard conditions, as described in Paragraphs 81-83.

117.    Defendants prohibited Plaintiffs from having visitors to the housing site.

118.   Plaintiff Maricela Marin-Santiago witnessed Defendant Gumara Canela verbally abuse and physically push a coworker's sister who had gone to the housing facility to bring clean clothes to her sister. Canela then threw the clean clothes on the dirt ground.

119.   Defendants employed men to guard the housing site to prevent workers from escaping during the night.

120.   Defendants locked the gate to the housing grounds to prevent workers from escaping.

121.   Defendants placed locks on the doors of the buildings while workers slept to prevent workers from escaping.

122.   Defendants forced Plaintiffs to perform arduous labor without adequate access to food or water.

123.   Defendant Gumara Canela berated Plaintiffs with insults and vulgarities at numerous times to maintain Plaintiffs in a state of apprehension.

124.   Defendants forced Plaintiffs to work without compensation.

125.   Defendants repeatedly threatened, or caused Plaintiffs to be threatened, that any worker who left the employment would be reported to immigration.

126.   Defendant Gumara Canela threatened to call the police on Plaintiffs if she saw Plaintiffs were not working.

127.   Defendants threatened, or caused Plaintiffs to be threatened, that any worker who left the employment would be unable to return to the U.S. with another H-2A Visa in the future.

128.   Defendants threatened Plaintiffs with significant debt to prevent Plaintiffs from leaving Defendants' employment, in that Defendants would require Plaintiffs to pay a certain amount of money to Defendants to be released from the contract.

129.   Because Defendants did not pay Plaintiffs their wages, and because Plaintiffs had to pay for travel and recruitment expenses, Plaintiffs had little or no money while in Alma, Georgia.

130.   On or around December 6, 2020, Plaintiffs complained to Defendant Ismael Perez of the conditions of employment, the confiscation of their travel documents, and the threats of serious harm by Defendant Gumara Canela.

131.   Plaintiffs asked Defendant Perez to help them recover their travel documents.

132.   Defendant Perez did not help Plaintiffs recover their travel documents and, instead, told Plaintiffs to remain under Defendants' employ.

133.   With knowledge of Plaintiffs' circumstances, Defendant Perez continued to participate in and profit from Plaintiffs' forced labor through his business partnership with the Canelas.

134.   While acting as a supervisor in the pine and blueberry worksites, Defendant Daniel Canela made repeated threats of deportation to Plaintiffs in response to complaints of the work conditions.

135.   Plaintiffs continued to work for Defendants because they feared legal or violent retaliation from Defendants, and/or being unable to repay the loans Defendants induced them to take out, and/or they feared being deported, and/or they feared being unable to return to the United States with an H-2A Visa.

136.   During Plaintiffs' time in Defendants' labor trafficking scheme, Plaintiffs experienced emotional distress, including stress, sleeplessness, anxiety, humiliation, and fear of being deported, of being harmed, and of the consequences of being unable to pay back their loans.

137.   On the night of December 8, 2020, Plaintiffs escaped from the Canela housing facility.

138.  When Plaintiffs left Defendants' employment, they still owed significant amounts of money on their loans for pre-employment expenses.

139.  When Plaintiffs left Defendants' captivity, Plaintiffs reasonably believed they owed Defendants a legally enforceable monetary debt for leaving the contract.

140.  After Plaintiffs' escape, Daniel Canela, as representative of the business partnership between the Canelas and Perez, called Plaintiff David Marin-Jose to investigate Plaintiffs' whereabouts and threaten to report them to immigration if they did not return.

141.  During the call, Defendant Daniel Canela did not offer to arrange the payment of Plaintiffs' unpaid wages.

142.  After Plaintiffs' escape, Defendant Ismael Perez called Plaintiff Maricela Marin-Santiago, demanding Plaintiffs return to his employ and informing her that Plaintiffs owed him a monetary debt for the losses he incurred from their escape.

143.  During the call, Defendant Perez did not offer to arrange the payment of Plaintiffs' unpaid wages.

144.  After escaping from Defendants' captivity, Plaintiffs continued to suffer emotional distress caused by their time working under labor trafficking conditions, and Defendants' efforts to locate and return Plaintiffs to their employ, including stress, anxiety, panic attacks, sadness, sleeplessness, headaches, and/or fear of being deported, of retaliation by Defendants against Plaintiffs or Plaintiffs' family in Mexico, of being unable to financially care for their family due to debts from their trafficking.

<u>Alter Ego Allegations</u>

145.  Defendant Canela Resources served as a mere alter ego of Defendants Gumara Canela and Daniel Canela.

146.   The Canelas ignored corporate formalities and used the corporate form to perpetrate fraud against Plaintiffs, the GADOL, and the USDOL.

147.   Defendants Gumara Canela and Daniel Canela used D.Canela Resources, LLC as a subterfuge to permit themselves and Defendant Perez to engage in labor trafficking.

148.   Allowing the use of Canela Resources to shield Defendants from personal liability for the egregious violations they committed would work an injustice on Plaintiffs.

## VI. CLAIMS

### COUNT I: FORCED LABOR TRAFFICKING - TVPRA

*All Plaintiffs Against All Defendants*

149.   Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

150.   This Count sets forth a claim by Plaintiffs against all Defendants under the civil remedies provision of the TVPRA (18 U.S.C. § 1595) for trafficking with respect to involuntary servitude,[22] forced labor,[23] benefitting financially from trafficking in persons,[24] and, in the alternative, attempted forced labor.[25]

151.   Defendants knowingly recruited, harbored, and transported Plaintiffs for the purpose of subjecting them to forced labor.

152.   Defendants knowingly provided or obtained Plaintiffs' labor or services, or attempted to do so, by means of:

a)   force, threats of force, physical restraint, or threats of physical restraint to Plaintiffs or another person, in violation of 18 U.S.C. § 1589(a)(1); and/or

---

[22] 18 U.S.C. § 1590.
[23] 18 U.S.C. § 1589.
[24] 18 U.S.C. § 1593A.
[25] 18 U.S.C. § 1594(a).

b) serious harm or threats of serious harm to Plaintiffs, in violation of 18 U.S.C. § 1589(a)(2); and/or

c) abuse or threatened abuse of law or the legal process; and/or

d) a scheme intended to cause Plaintiffs to believe that if they did not perform labor or services for Defendants, they would suffer serious harm or physical restraint.

153. Defendants placed locks on the entrance to Plaintiffs' housing site and sleeping quarters at night to prevent Plaintiffs from leaving.[26]

154. Defendant Gumara Canela's public use of force against another person, as described in Paragraph 118, was also a threat of force against workers who disobeyed Defendants' rules.

155. Defendants threatened Plaintiffs with serious harm if they did not submit to the abusive living and working conditions or if they tried to escape.[27]

156. Defendants' threats to Plaintiffs included intimidating Plaintiffs by telling them that Defendants would report them to immigration and the police.[28]

157. Defendants knowingly induced Plaintiffs to take out loans to pay recruitment fees,[29] to compel Plaintiffs or to attempt to compel Plaintiffs to continue working for Defendants in order to pay off their loans.

158. Defendants subjected Plaintiffs to verbal abuse, inhumane living conditions, and worked Plaintiffs without access to food and water for prolonged periods of time, and for no pay.[30]

---

[26] *See* ¶¶ 120-121.
[27] *See* ¶¶ 125-128, and 133.
[28] *Id.*
[29] *See* ¶¶ 59-61 and 109-111.
[30] *See* ¶¶ 80-83, 85, 86, 89, 97, 99-101, and 119-124.

159.  Defendants'scheme to subject Plaintiffs and other workers to forced labor included, but was not limited to:

    a)    Lying to the government in their H-2A application,

    b)    Preying on vulnerable workers from poor communities,

    c)    Lying to workers during recruitment,

    d)    Charging illegal recruitment fees,

    e)    Inducing Plaintiffs to take on debt,

    f)    Confiscating plaintiffs passports,

    g)    Isolating Plaintiffs from outside contacts, and

    h)    Using threats of debt, legal repercussions and immigration enforcement.

160.  Defendant Perez knowingly benefited financially, and/or by receiving Plaintiffs' labor or services, from the forced labor of Plaintiffs.

161.  In the alternative, Defendant Perez knowingly attempted to subject Plaintiffs to forced labor and/or benefit financially from the forced labor of Plaintiffs.

162.  As a result of Defendants' violations as alleged in this Count, Plaintiffs seek economic, punitive, and emotional distress damages, the costs of this action, and reasonable attorney's fees.

**COUNT II: UNLAWFUL CONDUCT WITH RESPECT TO DOCUMENTS - TVPRA**

*All Plaintiffs Against Defendants Gumara Canela and Daniel Canela*

163.  Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

164. This Count sets forth a claim by Plaintiffs against Defendants Gumara Canela and Daniel
Canela under the civil remedies provision of the TVPRA,[31] for unlawful conduct with
respect to documents, under 18 U.S.C. § 1592.

165. Defendants knowingly confiscated Plaintiffs' passports, visas, and I-94 forms.

166. Defendants confiscated these documents in the course of violating 18 U.S.C. § 1590 and
18 U.S.C. § 1589.

167. Defendants knowingly confiscated Plaintiffs' documents to prevent or restrict, or to
attempt to prevent or restrict, Plaintiffs' liberty to move or travel, in order to maintain
Plaintiffs' labor and services, in violation of 18 U.S.C. § 1592.

168. As a result of Defendants' violations as alleged in this Count, Plaintiffs seek economic,
punitive, and emotional distress damages, the costs of this action, and reasonable
attorney's fees.

### COUNT III: MINIMUM WAGE – FLSA

*All Plaintiffs Against All Defendants*

169. Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by
reference.

170. Plaintiffs bring FLSA minimum wage claims against all Defendants.

171. Defendants failed to pay Plaintiffs the required federal minimum wage rate of $7.25 for
every compensable hour of labor performed in a workweek, in violation of
29 U.S.C. § 206(a).

172. The violations alleged in this Count resulted, in part, from Defendants' willful failure to
pay Plaintiffs any wages for their work.

---

[31] 18 U.S.C. § 1595.

173.   The violations alleged in this Count resulted, in part, from Defendants' willful failure to reimburse expenses, including those described in Paragraphs 58-59, 61-66, and 68, which Plaintiffs incurred primarily for the benefit of Defendants.

174.   As a result of Defendants' willful violations of the FLSA, 29 U.S.C. § 216(b) entitles Plaintiffs to recover the amount of their unpaid wages, an equal amount as liquidated damages, attorneys' fees, and costs of this action.

### COUNT IV: BREACH OF CONTRACT – WAGE PROVISIONS

*All Plaintiffs Against Defendants Canela Resources, Gumara Canela, and Daniel Canela*

175.   Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

176.   Plaintiffs bring breach of contract claims for violations of the wage provisions of the employment contract against Defendants Canela Resources, Gumara Canela, and Daniel Canela.

177.   **Error! Reference source not found.**Defendants offered to Plaintiffs employment on the terms and conditions set out in the 2020-21 Job Order and as described in Paragraphs 44, 47, and 53.

178.   Among the terms Defendants offered, and Plaintiffs accepted, was a promise to pay the applicable AEWR for each hour worked.[32]

179.   Plaintiffs performed labor for Defendants.[33]

180.   Defendants failed to pay Plaintiffs at least the AEWR of $11.71 per hour for each compensable hour.[34]

---

[32] *See* ¶ 44(f).
[33] *See* ¶¶ 84-87, 89, 93, and 95-97.
[34] *See* ¶¶ 75 and 99.

181.    Defendants, therefore, breached their employment contracts with Plaintiffs.

182.    As a direct consequence of the Defendants' breaches of Plaintiffs' employment contracts, Plaintiffs suffered economic injuries.

183.    Defendants Canela Resources, Gumara Canela, and Daniel Canela are jointly and severally liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breaches, as provided by federal common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

**COUNT V: BREACH OF CONTRACT - THREE-QUARTERS GUARANTEE**

*All Plaintiffs Against Defendants Canela Resources, Gumara Canela, and Daniel Canela*

184.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

185.    Plaintiffs bring breach of contract claims for violations of the three-quarters guarantee provision of the employment contract against Defendants Canela Resources, Gumara Canela, and Daniel Canela. Defendants offered to Plaintiffs employment on the terms and conditions set out in the 2020-21 Job Order.[35] **Error! Reference source not found.**Plaintiffs accepted Defendants' offers.

186.    Among the terms that Defendants offered and Plaintiffs accepted was a promise to guarantee employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in the 2020-21 Job Order, or the monetary equivalent if the hours were not offered.[36]

---

[35] *See* ¶¶ 44-45, 47, 53, 57, and 109.
[36] 20 C.F.R. § 655.122(i).

187. The violations alleged in this Count resulted from Defendants' imposition of working conditions so intolerable that a reasonable person in Plaintiffs' position would have been compelled to resign.[37]

188. By compelling Plaintiffs' resignations, the Defendants failed to offer at least three-fourths of the workdays of the total work period advertised in the 2020-21 Job Order.

189. The Defendants did not supplement Plaintiffs' wages to ensure that Plaintiffs were compensated for at least three-fourths of the workdays of the total work period advertised in the 2020-21 Job Order.

190. The Defendants, therefore, breached their employment contract with Plaintiffs.

191. As a direct consequence of the Defendants' breaches of Plaintiffs' employment contracts, Plaintiffs suffered economic injuries.

192. Defendants Canela Resources, Gumara Canela, and Daniel Canela are jointly and severally liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from the Defendants' breaches, as provided by federal common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(a)   Declare Defendant Canela Resources an alter ego of Defendants Gumara Canela and Daniel Canela;

(b)   Grant judgment against Defendant Perez, in favor of Plaintiffs, in the amount of their compensatory damages, for Defendant's violations of the TVPRA as proved, including the promised contractual hourly wage for Plaintiffs' work, punitive

---

[37] *See* ¶¶ 78-83, 85-87, 89-93, 95-96, 99, 118, 122-128, and 136.

damages, and damages for the emotional harm that Defendant's TVPRA

violations caused;

(c)     Grant judgment against the Defendants Gumara Canela and Daniel Canela, in

favor of Plaintiffs, in the amount of their compensatory damages, for Defendants'

violations of the TVPRA as proved, including the promised contractual hourly

wage for Plaintiffs' work, punitive damages, and damages for the emotional harm

that that the Defendants' violations caused;

(d)     Grant judgment against all Defendants, jointly and severally, in favor of Plaintiffs

on their FLSA claims, and award each of them the amount of their unpaid

minimum wages and an equal amount as liquidated damages, pursuant to 29

U.S.C. § 216(b);

(e)     Grant judgment against Defendants Defendant Canela Resources, Gumara Canela,

and Daniel Canela, jointly and severally, in favor of Plaintiffs on their breach of

contract claims, and award each Plaintiff their actual damages arising from

Defendants' contractual breaches;

(f)     Award Plaintiffs pre- and post-judgment interest as allowed by law;

(g)     Award Plaintiffs attorney's fees and the costs of this action; and

(h)     Award Plaintiffs such further relief, at law or in equity, as this Court deems just

and proper.


This 18th day of October 2021.                              Respectfully submitted,

                                                            */s/ Juan Alberto Barragan-Rangel*
                                                            Juan Alberto Barragan-Rangel
                                                            Lead Counsel
                                                            Georgia Bar No.: 421897

E-mail: jbarragan@glsp.org


*/s/ Solimar Mercado-Spencer* _____
Solimar Mercado-Spencer
Georgia Bar No.: 686614
E-mail: smercado-spencer@glsp.org


*/s/ Lisa J. Krisher* _____
Lisa J. Krisher
Georgia Bar No.: 429762
E-mail: lkrisher@glsp.org

Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA 30303
Phone: (404) 463-1633
Fax:    (404) 463-1623

*Attorneys for Plaintiffs*