UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| MARICELA MARIN-SANTIAGO, JOSUE GARCIA-GARCIA, DAVID MARIN-JOSE, DIONICIO MARIN-JOSE, MOISES SARMIENTO-JOSE, ELIZABETH CANALES-CENTENO, SARA CANALES-CENTENO, IBRAGIT CORTES-ALMANZA, JESUS GARCIA-CANALES, | |
| Plaintiffs, | Civil Action No.: 5:21-cv-00061-LGW-BWC |
| v. | |
| GUMARA CANELA, DANIEL CANELA, D.CANELA RESOURCES, LLC, and ISMAEL PEREZ, | |
| Defendants. | |

## AMENDED COMPLAINT

## I. PRELIMINARY STATEMENT

1.      Plaintiffs are migrant workers lured from their homes in Mexico into forced labor by Defendants' false promises of gainful employment as H-2A Visa workers.

2.      Defendants used the H-2A Visa program to transport Plaintiffs to South Georgia and force them to work in dangerous conditions without pay, all while housing Plaintiffs in substandard housing and subjecting them to ongoing emotional abuse. As a result of Defendants' actions, Plaintiffs suffered significant economic and psychological harm.

3.      Plaintiffs now bring this action to vindicate their rights under the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA"), 18 U.S.C. §§ 1595, *et seq*.; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.; and under Georgia contract law.

4.     Plaintiffs seek unpaid wages, statutory liquidated damages, general and special damages, punitive damages, emotional distress damages, damages arising from Defendants' breach of contract, pre- and post-judgment interest, costs, and reasonable attorney's fees.

## II. JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action under:

a)     28 U.S.C. § 1331 (Federal Question);

b)     28 U.S.C. § 1337 (Interstate Commerce);

c)     29 U.S.C. § 216(b) (FLSA);

d)     18 U.S.C. § 1595(a) (TVPRA); and

e)     28 U.S.C. § 1367 (Supplemental Jurisdiction).

6.     This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III, Section II of the U.S. Constitution.

7.     Venue is proper in this district and division under 28 U.S.C. § 1391(b)-(d) and S.D. Ga. Local Rule 2.1 because a substantial part of the events or omissions giving rise to the claim occurred in this district and division; and Defendants Gumara Canela, Daniel Canela, and Ismael Perez reside in this district and division.

## III. PARTIES

### Plaintiffs

8.     At all times relevant to this action, all Plaintiffs[1] were citizens of Mexico admitted into the United States on a temporary basis under the auspices of the federal H-2A Program. *See generally* 8 U.S.C. § 1188; 20 C.F.R. § 655.0, *et seq.*

---

[1] Maricela Marin-Santiago, Josue Garcia-Garcia, David Marin-Jose, Dionicio Marin-Jose, Moises Sarmiento-Jose, Elizabeth Canales-Centeno, Sara Canales-Centeno, Ibragit Cortes-Almanza, Jesus Garcia-Canales.

9.      Plaintiffs are from rural, impoverished areas of Mexico where there are few opportunities for gainful employment, and no opportunities for earning wages comparable to those promised under the H-2A Program.

10.     As Defendants' employees, Plaintiffs handled or otherwise worked on goods or materials that had been moved or produced for interstate commerce.

11.     Defendants employed Plaintiffs for the harvest and maintenance of blueberries and pine straw for sale in interstate commerce.

12.     Defendants transported Plaintiffs from Mexico to Georgia to work.

13.     Plaintiffs attached their signed FLSA consent forms as Exhibit A.

<u>Defendant D.Canela Resources, LLC</u>

14.     Defendant D.Canela Resources, LLC ("Canela Resources"), a Georgia limited liability company, is an H-2A Labor Contractor in that it recruited, solicited, hired, employed, furnished, housed, and transported H-2A workers; and is not a fixed-site employer, an agricultural association, or an employee of a fixed-site employer or agricultural association. *See* 20 C.F.R. § 655.103(b).

15.     At all times relevant to this action, Defendant Canela Resources operated in South Georgia, including Atkinson County, Bacon County, Coffee County, and Pierce County.

16.     The Articles of Organization for D.Canela Resources, LLC list Defendant Gumara Canela as Organizer.

17.     Canela Resources' Registered Agent, Maria Leticia Patricio, can be served at 1931 GA Hwy 32 E, Douglas, GA 31533.

18.     At all times relevant to this action, Defendant Canela Resources had a place of business in the U.S. and a means by which it could be contacted for employment, had the ability

to supervise and control the work of Plaintiffs, and had a valid Federal Employer Identification Number.

19.     At all times relevant to this action, Canela Resources was an employer of Plaintiffs under the FLSA, in that it suffered or permitted Plaintiffs to work. *See* 29 U.S.C. § 203(g).

<u>Defendants Gumara Canela and Daniel Canela</u>

20.     Defendants Gumara Canela and Daniel Canela ("the Canelas") reside in Bacon County, Georgia.

21.     Defendants Gumara Canela and Daniel Canela can be served at 773 Pine Level Church Rd., Alma, Georgia 31510.

22.     At all times relevant to this action, Defendant Gumara Canela owned, acted as a day-to-day manager of, and had operational control over, Defendant Canela Resources.

23.     At all times relevant to this action, Defendant Daniel Canela acted as a day-to-day manager of, and had operational control over, Defendant Canela Resources.

24.     At all times relevant to this action, Defendants Gumara and Daniel Canela had the right to control the manner and means by which Plaintiffs performed their work, including the power to hire and fire Plaintiffs and control over the conditions of employment.

25.     Upon information and belief, at all times relevant to this action, Gumara Canela and husband Daniel Canela jointly owned and operated D.Canela Resources, LLC.

26.     At all times relevant to this action, the Canelas were employers of Plaintiffs under the FLSA, in that they suffered or permitted Plaintiffs to work. *See* 29 U.S.C. § 203(g).

<u>Defendant Ismael Perez</u>

27.     Defendant Ismael Perez ("Perez") resides in Atkinson County, Georgia.

28.     Defendant Perez can be served at 315 Main Street S, Pearson, Georgia 31642.

29.     At all times relevant to this action, Defendant Perez was a farm labor contractor who, for money or other valuable consideration paid or promised to be paid, recruited, hired, furnished, and transported seasonal agricultural workers in South Georgia, including Atkinson County, Bacon County, Coffee County, and Pierce County.

30.     Upon information and belief, at all times relevant to this action, Defendant Perez operated as a farm labor contractor without a Certificate of Registration from the U.S. Department of Labor ("USDOL").

31.     At all times relevant to this action, Ismael Perez was an employer of Plaintiffs Maricela Marin Santiago, Josue Garcia Garcia, David Marin Jose, Dionicio Marin Jose, and Moises Sarmiento Jose under the FLSA, in that Perez suffered or permitted Plaintiffs to work. *See* 29 U.S.C. § 203(g).

**IV. STATUTORY AND REGULATORY STRUCTURE OF THE H-2A PROGRAM**

38.     An agricultural employer in the United States may bring temporary foreign workers ("H2A workers") to the United States if the United States Department of Labor ("USDOL") certifies that (1) there are not enough U.S. workers to perform the job, and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed.[11] These provisions, along with the implementing federal regulations, are commonly referred to as the "H-2A program."

39.     Under the H-2A program, employers must file a temporary labor certification application with the USDOL's Employment and Training Administration.[2]. The application must include a job offer, known as a "job order," which is used in the recruitment of both U.S. and H-2A workers and becomes the work contract of the employed workers.[3]

40.     The job order must comply with the applicable H-2A regulations that establish the minimum benefits, wages, and working conditions that must be offered to avoid adversely affecting similarly employed U.S. workers.[4]

41.     The H-2A regulations require, in part, the following:

a)      If the worker is paid by the hour, the employer must pay the worker, at least, the Adverse Effect Wage Rate ("AEWR"), the prevailing hourly wage rate, the prevailing piece rate, the agreed-upon collective bargaining rate, or the Federal or State minimum wage rate, in effect at the time work is performed, whichever is highest, for every hour or portion thereof worked during a pay period.[5]

b)      If the worker is paid on a piece-rate basis, and the worker's earnings do not result in average earnings of, at least, the AEWR, then the worker's pay must be supplemented so that the worker's earnings are, at least, as much as the worker would have earned had the worker been paid the AEWR.[6]

c)      The employer either must provide each worker with three meals per day or must furnish free and convenient kitchen facilities to the workers so that the

---

[2] 20 C.F.R. § 655.130.
[3] See 20 C.F.R. § 655.103(b) (definition of "work contract").
[4] 20 C.F.R. § 655.121(a)(3).
[5] 20 C.F.R. § 655.122(l).
[6] 20 C.F.R. § 655.122(l)(2)(i).

workers can prepare their own meals. Where the employer provides the meals, the job order must state the charge, if any, to the worker for such meals.[7]

d)      The employer must provide housing to the workers, free of charge, and the housing must meet federal and local standards.[8]

e)      The employer must keep accurate and adequate records with respect to the workers' earnings, including but not limited to: field tally records, supporting summary payroll records, and records showing the nature and amount of the work performed; the number of hours of work offered each day by the employer; the hours actually worked each day by the worker; the time the work began and ended each workday; the rate of pay (both piece rate and hourly, if applicable); the worker's earnings per pay period; the worker's home address; and the amount of and reasons for any and all deductions taken from the worker's wages.[9]

f)      The employer must furnish to each worker, on or before each payday, a written statement that includes, among other items: the worker's total earnings for the pay period; the worker's hourly rate and/or piece rate of pay; the hours of employment offered to the worker; the hours actually worked by the worker; an itemization of all deductions made from the worker's wages; and, if piece rates are used, the units produced daily.[10]

g)      The employer must provide to each H-2A worker, no later than the time at which the worker applies for the visa, a copy of the work contract between the

---

[7] 20 C.F.R. § 655.122(g).
[8] 20 C.F.R. § 655.122(d).
[9] 20 C.F.R. § 655.122(j)(1).
[10] 20 C.F.R. § 655.122(k).

employer and the worker in a language understood by the worker as necessary or reasonable.[11]

## V. STATEMENT OF FACTS

### Partnership between Ismael Perez and the Canelas

32.     In 2018, Defendant Perez recruited and hired Plaintiffs Maricela Marin Santiago, David Marin Jose, and Dionicio Marin Jose, (collectively, "the Marin Plaintiffs"), from their hometowns in Oaxaca, Mexico, to work for the Perez Family's H-2A contracting business, Primicia Harvesting, LLC., as H-2A Visa workers.

33.     Ismael Perez's daughter, Yesenia Perez, operated as a foreign labor contractor through the trade name Primicia Harvesting.

34.     On or around April 30, 2020, the USDOL debarred labor contractor Yesenia Perez, dba Primicia Harvesting, from participating in the H-2A Program.

35.     Upon information and belief, Defendant Perez entered into a business partnership with the Canelas to use the H-2A program to circumvent Primicia Harvesting's debarment and jointly recruit, hire, and employ a group of H-2A workers, including the Marin Plaintiffs for the 2020 season.

### The Employment Contracts

36.     On or around September 11, 2020, Defendant Canela Resources submitted job order number H-300-20241-794468, ("the 2020-21 Job Order") to the Georgia Department of Labor ("GADOL"), and an Application for Temporary Employment Certification to the USDOL.

---

[11] 20 C.F.R. § 655.122(q).

37.     On or around February 1, 2021, Defendant Canela Resources submitted job order number H-300-21021-025783, ("the 2021 Job Order") to the GADOL, and an Application for Temporary Employment Certification to the USDOL.

38.     In both applications, Defendant Gumara Canela, signed the following Employer Certification: "I declare under penalty of perjury that I have read and reviewed this clearance order, including every page of this Form ETA-790A and all supporting addendums, and that to the best of my knowledge, the information contained therein is true and accurate. This clearance order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. 20 CFR 653.501(c)(3)(viii). I understand that to knowingly furnish materially false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a federal offense punishable by fines, imprisonment, or both. 18 U.S.C. 2, 1001."[12]

39.     The approved 2020-21 Job Order, (Attached as Exhibit B), and 2021 Job Order, (Attached as Exhibit C), included, but were not limited to, the following terms:

a)      A prohibition against the employer and its agents from seeking or receiving payment from any worker for application fees and recruitment costs.[13]

b)      Period of employment of 10/30/2021 through 02/15/2021, for the 2020-21 Job Order; and of 03/22/2021 through 07/15/2021, for the 2021 Job Order.

h)      Anticipated hours of work of at least 35 hours per week.

i)      Job duties described as farm labor related to blueberries.

---

[12] *See* Exhibit B, Page 8; and Exhibit C, Page 8.
[13] *See* 20 C.F.R. § 655.135(j).

j)    An hourly wage of not less than the AEWR, or $11.71 per hour for work performed within year 2020 through February 22, 2021, and $11.81 per hour for work performed after February 22, 2021.[14]

k)    A piece rate of $0.16 per plant, for the 2020-21 Job Order; and of $0.50 per pound, for the for the 2021 Job Order.

l)    A weekly pay period.

m)    Free housing that met local, state and federal requirements, including adequate kitchen facilities with utensils to allow workers to cook their own meals.

n)    Weekly trips to a food store and a laundry facility.

o)    Guaranteed employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in each respective job order, or the monetary equivalent if the hours were not offered.

40.    The terms and conditions of the 2020-21 Job Order and the 2021 Job Order, together with the requirements of 20 C.F.R. § 655, constituted job offers.

41.    The job offers, when accepted, created a work contract between Defendants and each Plaintiff who accepted the offer.

42.    The work contracts at issue here incorporate a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws" including the FLSA and the TVPRA.[15]

---

[14] Although the 2021 Job Order lists an adverse effect wage rate ("AEWR") of $11.71 per hour, the applicable AEWR in Georgia, as of February 23, 2021 is $11.81 hour. *See* 86 Fed. Reg. 10996 (Feb. 23, 2021).
[15] *See* 20 C.F.R. § 655.135(c).

43.     By promising to pay the federally mandated wage rate, Defendants also promised to pay that wage free and clear without deductions for items for the employers' benefit or without reducing the workers' wages by shifting costs to those workers.

44.     The Employer's Certification in both the 2020-21 Job Order and the 2021 Job Order certifies that the respective job order "describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job."

45.     When Gumara Canela signed the Employer's Certification in the 2020-21 Job Order and the 2021 Job Order, she knew some of the representations were false.

46.     In reliance of Defendant Gumara Canela's certification in the 2020-21 and 2021 Job Orders, the GADOL approved both the 2020-21 Job Order and the 2021 Job Order.

47.     When Gumara Canela signed the Employer Certifications referred to in Paragraph 44, supra, she knew the following statement to be true:

   a)     That Defendants would charge their workers, including Plaintiffs, various fees associated with H-2A recruitment and employment.

   b)     That Defendants would use the H-2A workers, including Plaintiffs, for job duties that were not authorized under the Job Orders, including raking pine straw, babysitting, cooking, and cleaning.

   c)     That Defendants were circumventing Primicia Harvesting's debarment from the H-2A program, by working in partnership with Ismael Perez to share workers among their separate farm labor contracting operations.

   p)     That Defendants would not pay to their H-2A workers, including Plaintiffs, the wage rates offered in the respective Job Orders, as required by law.

q)      That Defendants would not provide to their H-2A workers, including

Plaintiffs, housing that met minimum standards required by law.

48.      In reliance of Defendant Gumara Canela's false declarations, under penalty of

perjury, in the 2020-21 and 2021 Job Orders, the USDOL approved both Job Orders and allowed

for the certification of recruitment of 186 foreign guest workers, including Plaintiffs.

<u>Recruitment of Plaintiffs in Mexico</u>

49.      In 2020, Defendant Perez, as an agent of the partnership between Perez and the

Canelas, recruited the Marin Plaintiffs, as well as Plaintiffs Garcia-Garcia and Sarmiento-Jose

from Oaxaca, Mexico, (collectively, "the Oaxaca Plaintiffs"), to work for Perez and the Canelas

as H-2A Visa workers in the United States.

50.      During recruitment, Defendant Perez, as an agent of his partnership with the

Canelas, promised the Oaxaca Plaintiffs work in the harvest of blueberries at an hourly wage rate

determined by the 2020-21 Job Order.

51.      The terms and conditions of the 2020-21 Job Order, together with the

requirements of 20 C.F.R. § 655, constituted an offer of employment.

52.      Relying on Defendants promises of gainful employment under the terms of the

2020-21 Job Order., the Oaxaca Plaintiffs accepted the offer of employment.

53.      The offer of employment, when accepted, created an employment contract

between Defendants and each of the Oaxaca Plaintiff who accepted the offer.

54.      In 2021, an agent of Defendants Canela Resources and the Canelas, recruited

Plaintiffs Elizabeth Canales-Centeno, Sara Canales-Centeno, Ibragit Cortes-Almanza, and Jesus

Garcia-Canales, (collectively, "the Mexico Plaintiffs"), from their hometown in Tlalnepantla de

Baz, in the State of Mexico, Country of Mexico, to work for the Canelas as H-2A Visa workers in the United States.

55.     During recruitment, Defendants Canela Resources and the Canelas, through their agent, promised the Mexico Plaintiffs work in the harvest of blueberries at an hourly wage rate determined by the 2021 Job Order.

56.     The terms and conditions of the 2021 Job Order, together with the requirements of 20 C.F.R. § 655, constituted an offer of employment.

57.     Relying on Defendants promises of gainful employment under the terms of the 2021 Job Order., the Mexico Plaintiffs accepted the offer of employment.

58.     The offer of employment, when accepted, created an employment contract between Defendants Canela Resources and the Canelas, and each of the Mexico Plaintiffs who accepted the offer.

59.     Plaintiffs' native language is Spanish, and they cannot read English.

60.     Defendants failed to give any of the Plaintiffs a copy of the employment contract translated in "a language understood by the worker[s]," as required by 20 C.F.R. § 655.103(q).

<u>Pre-Employment Expenses</u>

61.     Plaintiffs incurred various immigration, processing, and travel expenses in order to come to work for Defendants.

62.     Before traveling to Georgia, Defendants, through their agents, contacted Plaintiffs in Mexico, and required, as a condition of hire, that each Plaintiff pay a sum of money for travel to Georgia, visa expenses, and recruitment fees.

63.     Defendant Perez assured the Oaxaca Plaintiffs that they would be reimbursed for the pre-employment expenses charged by Defendants.

64.     Plaintiffs took out loans to pay the fees required by Defendants, and to pay additional undisclosed travel expenses.

65.     After paying the required fees to Defendants, Plaintiffs still had to pay additional expenses in order to travel to Georgia to work.

66.     In order to comply with Defendants' hiring process, Plaintiffs traveled, at their own expense, from their homes in Mexico, to the U.S. Consulate in Mexico for the processing of their H-2A Visas.

67.     Plaintiffs incurred expenses for lodging during their travel from their homes to the U.S. Consulate.

68.     Plaintiffs also incurred expenses for lodging while Plaintiffs completed visa application forms, attended consular interviews, and waited for the visa applications to be processed and issued.

69.     At the U.S. border in Texas, each Plaintiff paid a fee to the U.S. Customs and Border Protection ("CBP") for the issuance of an Arrival/Departure Record (I-94), which is required to enter the U.S.

70.     The Oaxaca Plaintiffs entered the U.S. on or around December 4, 2020.

71.     The Mexico Plaintiffs entered the U.S. on different dates between May and June of 2021.[16]

72.     Plaintiffs incurred travel-related expenses on their journey to their housing locations in Georgia from the U.S. Consulate in Mexico.

73.     The Oaxaca Plaintiffs arrived in Alma, Georgia on or around December 5, 2020.

---

[16] Jesus Garcia-Canales entered the U.S. on May 5, 2021. Sara Canales-Centeno entered the U.S. on June 9, 2021. Ibragit Cortes-Almanza and Elizabeth Canales Centeno entered the U.S. on June 18, 2021.

74.     Each of the Mexico Plaintiffs arrived in Alma, Georgia on a different date between May 2021 and June 2021.[17]

75.     The expenses described in Paragraphs 61-62, 65-69, and 72 were costs necessary to enter the U.S. as an H-2A worker and were incurred for the benefit of the Defendants, as defined by 29 C.F.R §§ 531.32(c) and 778.217.

76.     Plaintiffs incurred the expenses described in Paragraphs 61-62, 65-69, and 72 before receipt of their first paychecks. In fact, Plaintiffs did not receive any paycheck at all for their employment with Defendants.

77.     Defendants did not reimburse Plaintiffs for any of the expenses described in Paragraphs 61-62, 65-69, and 72.

78.     The employment contracts at issue here incorporate a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws" including the FLSA and the TVPRA.[18]

79.     By promising to pay the federally-mandated AEWR, Defendants also promised to pay that wage free and clear without deductions for items for the employers' benefit or without reducing the workers' wages by shifting costs to those workers.

80.     Defendants' failure to reimburse Plaintiffs for these expenses in the first workweek brought Plaintiffs' wages below the federal minimum wage and the AEWR.

---

[17] Jesus Garcia-Canales arrived on May 6, 2021. Sara Canales-Centeno arrived on June 10, 2021. Ibragit Cortes-Almanza and Elizabeth Canales-Centeno arrived on June 19, 2021.
[18] *See* 20 C.F.R. § 655.135(e).

<u>Wages and Working Conditions</u>

**A.  Facts Unique to the Oaxaca Plaintiffs (2020-21 Job Order)**

81.     On or around December 5, 2020, Gumara Canela, in contradiction to the terms previously agreed to in the 2020-21 Job Order, gathered Plaintiffs to announce changes to the terms and conditions of employment, including:

> a)     The first week of work would be unpaid.

> b)     Workers would be paid below the rate promised in the 2020-21 Job Order.

> c)     Deductions would be made to workers' pay for Defendants' expenses.

> d)     Workers would receive no reimbursements for pre-employment expenses.

> e)     Defendants reserved the right to extend the length of a workers' contract without the consent of the worker.

82.     Defendant Gumara Canela verbally abused the Oaxaca Plaintiffs in response to their protests to the changes in the terms and conditions of the contract.

83.     Upon arrival, the Oaxaca Plaintiffs discovered defects with the housing conditions, including:

> a)     Kitchen and sleeping areas covered in dust, insect and animal carcasses, and rodent feces.

> b)     No pans or other tools to prepare meals.

> c)     A stove that leaked flammable gas.

> d)     No running water.

84.     Upon arrival on December 5, 2020, Plaintiffs could not shower and had no food to prepare meals for that evening or the following day.

85.     Defendants failed to provide Plaintiffs adequate access to a grocery store in order for them to prepare their meals.

86.     On December 6, 2020, Defendants ordered Plaintiffs Josue Garcia-Garcia, David Marin-Jose, Dionicio Marin-Jose, and Moises Sarmiento-Jose ("the Male Oaxaca Plaintiffs") to perform manual labor in a blueberry field.

87.     On December 6, 2020, the Male Oaxaca Plaintiffs worked in the blueberry field from before sunrise until nightfall.

88.     On December 6, 2020, the Male Oaxaca Plaintiffs worked without food or water until around 4:00 PM.

89.     On December 6, 2020, Defendants ordered Plaintiff Maricela Marin-Santiago to perform maintenance on the housing facility and prepare meals from before sunrise until around 4:00 PM.

90.     Facilities maintenance and meal preparation were not job duties listed in the 2020-21 Job Order or disclosed to the Oaxaca Plaintiffs during recruitment.

91.     On December 6, 2020, Defendants did not allow Plaintiff Maricela Marin-Santiago to take breaks for rest or meals until after 4:00 PM.

92.     As a result of prolonged physical labor without food or water, the Oaxaca Plaintiffs suffered a physical impact, including thirst, hunger, dry mouth, dry lips, headache, fatigue, and/or dizziness.

93.     As a result of the painful and/or uncomfortable physiological symptoms the Oaxaca Plaintiffs experienced from prolonged physical labor without food or water, Plaintiffs suffered emotional distress, including stress, fear of serious injury, worry and/or anxiety.

94.     On December 7, 2020, Defendants tasked all Oaxaca Plaintiffs to bale pine straw from before sunrise to nightfall without adequate breaks for lunch or rest.

95.     Baling pine straw was not a job duty listed in the 2020-21 Job Order or disclosed to the Oaxaca Plaintiffs during recruitment.

96.     On December 8, 2020, Defendants tasked the Male Oaxaca Plaintiffs to bale pine straw from before sunrise to nightfall without adequate breaks for lunch or rest.

97.     On December 8, 2020, Defendants ordered Maricela Marin-Santiago to perform grounds maintenance at the housing site and to prepare and serve meals.

98.     On December 8, 2020, Plaintiff Marin-Santiago began work before sunrise, continued to work until around 5:00 PM, when she was allowed to eat, and then returned to work serving workers at around 7:00 PM.

99.     Grounds maintenance, preparing meals, and serving meals were not job duties listed in the 2020-21 Job Order or disclosed to the Oaxaca Plaintiffs during recruitment.

100.     Defendants failed to pay the Oaxaca Plaintiffs for any compensable hours worked.

**B.   Facts Unique to the Mexico Plaintiffs (2021 Job Order)**

101.     Plaintiff Jesus Garcia Canales arrived in Alma, Georgia, on or around May 6, 2021, around noon. He was taken to work right after lunch and worked through 5:00AM the next day.

102.     After Plaintiff Garcia-Canales' first day, he continued to work almost every day, in excess of 16 hours per day, until June 22, 2021.

103.     Defendants paid Plaintiff Garcia-Canales, in average, less than $500 per week, and did not pay him for his first or his last week of work.

104.    Plaintiff Sara Canales-Centeno arrived in Alma, Georgia, on or around July 10, 2021. She was taken to work that evening and worked through around 8:30PM that night.

105.    After Plaintiff Sara Canales-Centeno's first day, she continued to work almost every day, in excess of 12 hours each day, doing various job duties, including babysitting Gumara Canela's children and cleaning homes, in addition to working in the blueberry harvest.

106.    Defendants paid Plaintiff Sara Canales-Centeno, in average, less than $320 per week, and did not pay her for her first or her last week of work.

107.    Plaintiffs Ibragit Cortez-Almanza and Elizabeth Canales-Centeno arrived in Alma, Georgia, on or around June 18, 2021, in the evening, and their first day of work was June 21, 2021.

108.    Plaintiffs Ibragit Cortes-Almanza and Elizabeth Canales-Centeno worked for two days, in excess of 12 hours each day.

109.    Defendants did not pay any wages at all to Plaintiffs Ibragit Cortes-Alanza and Elizabeth Canales-Centeno.

110.    On or around June 19, 2021, Defendant Gumara Canela met with Jesus Garcia-Canales to tell him that although the Mexico Plaintiffs' contract ended on July 15, 2021, Gumara Canela intended to keep them as long as she wanted, and that, if the Mexico Plaintiffs wanted to leave earlier, they would have to pay Gumara Canela $5,000 each to be released.

111.    Defendants housed Elizabeth Canales-Centeno and Sara Canales-Centeno in one trailer with seven other workers. The trailer had one bedroom with four or five bunk beds next to each other. The trailer had no air conditioning and the residents, including the Mexico Plaintiffs,

were instructed to always stay inside their trailer, except when going to work or when taken by Defendants' agents to purchase food.

**C.  Facts Common Among all Plaintiffs (2020-21 and 2021 Job Orders)**

112.     Throughout Plaintiffs' employment, Defendant Gumara Canela verbally abused Plaintiffs and their coworkers, in public.

113.     Plaintiffs' weekly earnings fell below the applicable federal minimum wage and the contract's AEWR.

114.     Defendants did not contact Plaintiffs to arrange payment of unpaid wages.

115.     Defendants constructively discharged Plaintiffs from employment, as a result of the abusive and intolerable working conditions they imposed upon Plaintiffs.

116.     Defendants did not offer the total number of work hours equal to at least three-fourths of the workdays, as required by 20 C.F.R. § 655.122(i).

117.     Defendants did not supplement Plaintiffs' wages as required by 20 C.F.R. § 655.122(i).

118.     At all relevant times, all Defendants supervised Plaintiffs and controlled the manner and means by which Plaintiffs worked while in the blueberry and pine straw fields.

<u>Human Trafficking Scheme</u>

**A.  Facts Common Among all Plaintiffs (2020-21 and 2021 Job Orders)**

119.     Defendants recruited Plaintiffs in Mexico.

120.     Plaintiffs are poor and from impoverished communities with limited opportunities for employment and education.

121.     Defendants sought out workers from impoverished backgrounds and limited understanding of the U.S. legal system.

122.     During recruitment, Defendants knowingly made false promises to Plaintiffs about the wages and conditions of the offered employment.

123.     Defendants required Plaintiffs to pay substantial recruitment fees, which Defendants promised would cover travel expenses and would be reimbursed upon arrival to Georgia.

124.     Plaintiffs took out loans to pay the required fees and expenses.

125.     After making the pre-employment payments to Defendants, Plaintiffs still had to pay additional travel expenses in order to travel to Georgia to work.

126.     Once in the United States, Defendants confiscated Plaintiffs' passports to prevent them from escaping.

127.     When Plaintiffs arrived in Georgia, Defendants housed Plaintiffs in substandard conditions.

128.     Defendants prohibited the Plaintiffs from having visitors to their housing site.

129.     Defendants employed men to guard the housing site to prevent workers from escaping during the night.

130.     Defendants forced Plaintiffs to perform arduous labor without adequate access to food, water, or rest.

131.     Defendant Gumara Canela berated Plaintiffs with insults and vulgarities at numerous times to maintain Plaintiffs in a state of apprehension.

132.     Defendants forced Plaintiffs to work without compensation or for substandard wages.

133.     Defendants repeatedly threatened, or caused Plaintiffs to be threatened, that any worker who left the employment would be reported to immigration.

134.     Plaintiffs reasonably believed Defendant Gumara Canela's threats.

135.     Defendants threatened Plaintiffs with significant debt to prevent Plaintiffs from leaving Defendants' employment, in that Defendants would require Plaintiffs to pay a certain amount of money to Defendants to be released from the contract.

136.     Because Defendants did not pay Plaintiffs all their earned wages, and because Plaintiffs had to pay for travel and recruitment expenses, Plaintiffs had little or no money while in Alma, Georgia.

137.     Despite wanting to leave, Plaintiffs continued to work for Defendants because they feared legal or violent retaliation from Defendants, and/or being unable to repay the loans Defendants induced them to take out, and/or they feared being deported, and/or they feared being unable to return to the United States with an H-2A Visa.

138.     During Plaintiffs' time in Defendants' labor trafficking scheme, Plaintiffs experienced emotional distress, including stress, sleeplessness, anxiety, humiliation, and fear of being deported, of being harmed, and of the consequences of being unable to pay back their loans.

139.     When Plaintiffs left Defendants' captivity, they still owed money on the loans they had to take on to pay their pre-employment expenses.

140.     Except for the two Plaintiffs who paid Defendant Gumara Canela to be released from their captivity,[19] Plaintiffs reasonably believed they owed Defendants a legally enforceable monetary debt for leaving before the end of the contract.

141.     After escaping from Defendants' captivity, Plaintiffs continued to suffer emotional distress caused by their time working under labor trafficking conditions.

---

[19] Elizabeth and Sara Canales-Centeno.

**B.  Facts Common to the Oaxaca Plaintiffs (2020-21 Job Order)**

142.    On behalf of himself and the other Oaxaca Plaintiffs, Plaintiff Moises Sarmiento-Jose told Defendant Gumara Canela that the Oaxaca Plaintiffs had to take out loans to pay the pre-employment fees Defendants charged.

143.    Upon arrival to Georgia, Defendant Gumara Canela withheld the Oaxaca Plaintiffs' I-94 travel documents and told them they could not travel freely in the United States without their I-94s because their passports were worthless without the I-94s.

144.    Defendant Gumara Canela threatened to call the police on the Oaxaca Plaintiffs if she saw Plaintiffs were not working.

145.    Defendants threatened, or caused the Oaxaca Plaintiffs to be threatened, that any worker who left the employment would be unable to return to the U.S. with another H-2A Visa in the future.

146.    The Oaxaca Plaintiffs reasonably believed Gumara Canela's threats.

147.    Plaintiff Maricela Marin-Santiago witnessed Defendant Gumara Canela verbally abuse and physically push a coworker's sister who had gone to the housing facility to bring clean clothes to her sister. Plaintiff then saw Gumara Canela throw the clean clothes on the dirt ground.

148.    Defendants locked the gate to the housing grounds to prevent the Oaxaca Plaintiffs from escaping in the middle of the night.

149.    Defendants placed locks on the doors of the buildings while workers slept to prevent workers from escaping.

150.    On or around December 6, 2020, the Oaxaca Plaintiffs complained to Defendant Ismael Perez of the conditions of employment, the confiscation of their travel documents, and the threats of serious harm by Defendant Gumara Canela.

151.    The Oaxaca Plaintiffs asked Defendant Perez to help them recover their travel documents.

152.    Defendant Perez did not help Plaintiffs recover their travel documents and, instead, told the Oaxaca Plaintiffs to remain under Defendants' employ.

153.    With knowledge of the Oaxaca Plaintiffs' circumstances, Defendant Perez continued to participate in and profit from Plaintiffs' forced labor through his business partnership with the Canelas.

154.    While acting as a supervisor in the pine and blueberry worksites, Defendant Daniel Canela made repeated threats of deportation to the Oaxaca Plaintiffs in response to complaints of the work conditions.

155.    On the night of December 8, 2020, the Oaxaca Plaintiffs escaped from the Canela housing facility.

156.    After the Oaxaca Plaintiffs' escape, Defendant Daniel Canela, as representative of the business partnership between the Canelas and Perez, called Plaintiff David Marin-Jose to investigate Plaintiffs' whereabouts and threaten to report them to immigration if they did not return.

157.    During the call, Defendant Daniel Canela did not offer to arrange the payment of Plaintiffs' unpaid wages.

158.    After Plaintiffs' escape, Defendant Ismael Perez called Plaintiff Maricela Marin-Santiago, demanding Plaintiffs return to his employ and informing her that Plaintiffs owed him a monetary debt for the losses he incurred from their escape.

159.    During the call, Defendant Perez did not offer to arrange the payment of Plaintiffs' unpaid wages.

### C.  The Mexico Plaintiffs (2021 Job Order)

160.     Defendant Gumara Canela told the Mexico Plaintiffs that she intended to keep them working for her as long as she wanted, regardless of when the contract ended.

161.     The Mexico Plaintiffs were aware that Defendant Daniel Canela carried a handgun on his person while supervising and transporting the workers, including Mexico Plaintiffs.

162.     On or around May 13, 2021, a group of workers escaped on foot from the housing. Defendant Daniel Canela then instructed all the workers to enter the housing site and remain inside. Defendant Daniel Canela then told the remaining workers, including some of the Plaintiffs, that Immigration and Customs Enforcement was coming to the housing site.

163.     On or around May 21, 2021, some of the Mexico Plaintiffs heard that Daniel Canela and his men got into a bus to chase down the workers that had escaped from the housing.

164.     Plaintiff Jesus Garcia Canales reasonably believed that the Defendants and their associates would use deadly force to prevent them from leaving Defendants' employ.

165.     Defendant Gumara Canela told the Mexico Plaintiffs that, if Plaintiffs wanted to leave earlier, Plaintiffs would have to pay Gumara Canela $5,000 to be released.

166.     Plaintiffs Elizabeth Canales-Centeno and Sara Canales-Centeno, (collectively, "the Canales-Centeno Plaintiffs"), each paid $5,000 to Defendant Gumara Canela to be released.

167.     After accepting their release payments, Gumara Canela told the Canales-Centeno Plaintiffs that they were not allowed to leave just yet and demanded that they remained.

168.     The Canales-Centeno Plaintiffs escaped from Defendant's captivity on or around June 22, 2021.

<u>Alter Ego Allegations</u>

169.    Defendant Canela Resources served as a mere alter ego of Defendants Gumara Canela and Daniel Canela.

170.    The Canelas ignored corporate formalities and used the corporate form to perpetrate fraud against Plaintiffs, the GADOL, and the USDOL.

171.    Defendants Gumara Canela and Daniel Canela used D.Canela Resources, LLC as a subterfuge to permit themselves and Defendant Perez to engage in labor trafficking.

172.    Allowing the use of Canela Resources to shield Defendants from personal liability for the egregious violations they committed would work an injustice on Plaintiffs.

## VI. CLAIMS

### COUNT I: FAIR LABOR STANDARDS ACT – MINIMUM WAGE
(Oaxaca Plaintiffs Against All Defendants)

173.    The Oaxaca Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

174.    The Oaxaca Plaintiffs bring FLSA minimum wage claims against all Defendants.

175.    Defendants failed to pay Plaintiffs the required federal minimum wage rate of $7.25 for every compensable hour of labor performed in a workweek, in violation of 29 U.S.C. § 206(a).

176.    The violations alleged in this Count resulted, in part, from Defendants' willful failure to pay Plaintiffs any wages for their work.

177.    The violations alleged in this Count resulted, in part, from Defendants' willful failure to reimburse expenses, including those described in Paragraphs 61-62, 64-69, and 72, which Plaintiffs incurred primarily for the benefit of Defendants.

178.    As a result of Defendants' willful violations of the FLSA, 29 U.S.C. § 216(b) entitles the Oaxaca Plaintiffs to recover the amount of their unpaid wages, an equal amount as liquidated damages, attorneys' fees, and costs of this action.

## COUNT II: FAIR LABOR STANDARDS ACT – MINIMUM WAGE
(Mexico Plaintiffs Against Defendant D.Canela Resources, Defendant Gumara Canela, and Defendant Daniel Canela)

179.    The Mexico Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

180.    The Mexico Plaintiffs bring FLSA minimum wage claims against Defendant Canela Resources and the Canela Defendants.

181.    Defendants failed to pay Plaintiffs the required federal minimum wage rate of $7.25 for every compensable hour of labor performed in a workweek, in violation of 29 U.S.C. § 206(a).

182.    The violations alleged in this Count resulted, in part, from Defendants' willful failure to pay the Mexico Plaintiffs the proper wages for their work.

183.    The violations alleged in this Count resulted, in part, from Defendants' willful failure to reimburse expenses, including those described in Paragraphs 61-62, 64-69, and 72, which the Mexico Plaintiffs incurred primarily for the benefit of Defendants.

184.    As a result of Defendants' willful violations of the FLSA, 29 U.S.C. § 216(b) entitles the Mexico Plaintiffs to recover the amount of their unpaid wages, an equal amount as liquidated damages, attorneys' fees, and costs of this action.

## COUNT III: BREACH OF CONTRACT – WAGE PROVISIONS
(All Plaintiffs Against Defendants Canela Resources, Gumara Canela, and Daniel Canela)

185.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

186.     Plaintiffs bring breach of contract claims against Defendants Canela Resources, Gumara Canela, and Daniel Canela for violations of the wage provisions of the employment contracts that Defendants had with Plaintiffs.

187.     Defendants offered the Oaxaca Plaintiffs employment on the terms and conditions set out in the 2020-21 Job Order and as described in Paragraph 42.

188.     Defendants offered the Mexico Plaintiffs employment on the terms and conditions set out in the 2021 Job Order and as described in Paragraph 42.

189.     Among the terms Defendants offered, and Plaintiffs accepted, was a promise to pay the applicable AEWR for each hour worked.

190.     Plaintiffs performed labor for Defendants.

191.     Defendants failed to pay Plaintiffs at least the applicable AEWR for each compensable hour.

192.     Defendants, therefore, breached their employment contracts with Plaintiffs.

193.     As a direct consequence of the Defendants' breaches of Plaintiffs' employment contracts, Plaintiffs suffered economic injuries.

194.     Defendants Canela Resources, Gumara Canela, and Daniel Canela are jointly and severally liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breaches, as provided by federal common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

### COUNT IV: BREACH OF CONTRACT - THREE-QUARTERS GUARANTEE
(All Plaintiffs Against Defendants Canela Resources, Gumara Canela,
and Daniel Canela)

195.     Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

196.     Plaintiffs bring breach of contract claims against Defendants Canela Resources, Gumara Canela, and Daniel Canela, for violations of the three-quarters guarantee provisions of their employment contracts with Plaintiffs.

197.     Defendants offered the Oaxaca Plaintiffs employment on the terms and conditions set out in the 2020-21 Job Order and as described in Paragraph 42.

198.     Defendants offered the Mexico Plaintiffs employment on the terms and conditions set out in the 2021 Job Order and as described in Paragraph 42.

199.     Plaintiffs accepted Defendants' offers.

200.     Among the terms that Defendants offered and Plaintiffs accepted was a promise to guarantee employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in their respective Job Orders, or the monetary equivalent if the hours were not offered.

201.     The violations alleged in this Count resulted from Defendants' imposition of working conditions so intolerable that a reasonable person in Plaintiffs' position would have been compelled to resign.

202.     By compelling Plaintiffs' resignations, the Defendants failed to offer at least three-fourths of the workdays of the total work period advertised in their respective Job Orders.

203.     The Defendants did not supplement Plaintiffs' wages to ensure that Plaintiffs were compensated for at least three-fourths of the workdays of the total work period advertised in their respective Job Orders.

204.     The Defendants, therefore, breached their employment contracts with Plaintiffs.

205.     As a direct consequence of the Defendants' breaches of Plaintiffs' employment contracts, Plaintiffs suffered economic injuries.

206.    Defendants Canela Resources, Gumara Canela, and Daniel Canela are jointly and severally liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from the Defendants' breaches, as provided by federal common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

### COUNT V: FORCED LABOR TRAFFICKING - TVPRA
(Oaxaca Plaintiffs Against All Defendants)

207.    The Oaxaca Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

208.    This Count sets forth a claim by the Oaxaca Plaintiffs against all Defendants under the civil remedies provision of the TVPRA (18 U.S.C. § 1595) for trafficking with respect to involuntary servitude,[20] forced labor,[21] benefitting financially from trafficking in persons,[22] and, in the alternative, attempted forced labor.[23]

209.    Defendants knowingly recruited, harbored, and transported Plaintiffs for the purpose of subjecting them to forced labor.

210.    Defendants knowingly provided or obtained Plaintiffs' labor or services, or attempted to do so, by means of:

    a)  Force, threats of force, physical restraint, or threats of physical restraint to Plaintiffs or another person, in violation of 18 U.S.C. § 1589(a)(1); and/or

    b)  Serious harm or threats of serious harm to Plaintiffs, in violation of 18 U.S.C. § 1589(a)(2); and/or

    c)  Abuse or threatened abuse of law or the legal process; and/or

---

[20] 18 U.S.C. § 1590.
[21] 18 U.S.C. § 1589.
[22] 18 U.S.C. § 1593A.
[23] 18 U.S.C. § 1594(a).

     d)  A scheme intended to cause Plaintiffs to believe that if they did not perform labor or services for Defendants, they would suffer serious harm or physical restraint.

211.    In the alternative, Defendants knowingly attempted to subject the Oaxaca Plaintiffs to forced labor and/or benefitted financially from the forced labor of the Oaxaca Plaintiffs.

212.    As a result of Defendants' violations as alleged in this Count, the Oaxaca Plaintiffs seek economic, punitive, and emotional distress damages, the costs of this action, and reasonable attorney's fees.

### COUNT VI: FORCED LABOR TRAFFICKING - TVPRA
(Mexico Plaintiffs Against Defendants Canela Resources, Gumara Canela, and Daniel Canela)

213.    The Mexico Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

214.    This Count sets forth a claim by the Mexico Plaintiffs against all Defendants under the civil remedies provision of the TVPRA (18 U.S.C. § 1595) for trafficking with respect to involuntary servitude,[24] forced labor,[25] benefitting financially from trafficking in persons,[26] and, in the alternative, attempted forced labor.[27]

215.    Defendants knowingly recruited, harbored, and transported the Mexico Plaintiffs for the purpose of subjecting them to forced labor.

216.    Defendants knowingly provided or obtained the Mexico Plaintiffs' labor or services, or attempted to do so, by means of:

---

[24] 18 U.S.C. § 1590.
[25] 18 U.S.C. § 1589.
[26] 18 U.S.C. § 1593A.
[27] 18 U.S.C. § 1594(a).

a) Force, threats of force, physical restraint, or threats of physical restraint to Plaintiffs or another person, in violation of 18 U.S.C. § 1589(a)(1); and/or

b) Serious harm or threats of serious harm to Plaintiffs, in violation of 18 U.S.C. § 1589(a)(2); and/or

c) Abuse or threatened abuse of law or the legal process; and/or

d) A scheme intended to cause Plaintiffs to believe that if they did not perform labor or services for Defendants, they would suffer serious harm or physical restraint.

217.    In the alternative, Defendants knowingly attempted to subject the Mexico Plaintiffs to forced labor and/or benefitted financially from the forced labor of the Mexico Plaintiffs.

218.    As a result of Defendants' violations as alleged in this Count, the Mexico Plaintiffs seek economic, punitive, and emotional distress damages, the costs of this action, and reasonable attorney's fees.

219.    In the alternative, Defendants knowingly attempted to subject the Mexico Plaintiffs to forced labor and/or benefitted financially from the forced labor of the Mexico Plaintiffs.

220.    As a result of Defendants' violations as alleged in this Count, the Mexico Plaintiffs seek economic, punitive, and emotional distress damages, the costs of this action, and reasonable attorney's fees.

**COUNT VII - UNLAWFUL CONDUCT WITH RESPECT TO DOCUMENTS - TVPRA**
(All Plaintiffs Against Defendants Gumara Canela and Daniel Danela)

221.    Plaintiffs incorporate each of the allegations contained in the preceding

paragraphs by reference.

222.    This Count sets forth a claim by Plaintiffs against Defendants Gumara Canela and

Daniel Canela under the civil remedies provision of the TVPRA,[28] for unlawful conduct with

respect to documents, under 18 U.S.C. § 1592.

223.    Defendants knowingly confiscated Plaintiffs' passports, visas, and I-94 forms.

224.    Defendants confiscated these documents in the course of violating

18 U.S.C. § 1590 and 18 U.S.C. § 1589.

225.    Defendants knowingly confiscated Plaintiffs' documents to prevent or restrict, or

to attempt to prevent or restrict, Plaintiffs' liberty to move or travel, in order to maintain

Plaintiffs' labor and services, in violation of 18 U.S.C. § 1592.

226.    As a result of Defendants' violations as alleged in this Count, Plaintiffs seek

economic, punitive, and emotional distress damages, the costs of this action, and reasonable

attorney's fees.

---

[28] 18 U.S.C. § 1595.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(a) Grant judgment against all Defendants, jointly and severally, in favor of the Oaxaca Plaintiffs on their FLSA claims, and award each of them the amount of their unpaid minimum wages and an equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

(b) Grant judgment against Defendants D.Canela Resources, Gumara Canela, and Daniel Canela, jointly and severally, in favor of the Mexico Plaintiffs on their FLSA claims, and award each of them the amount of their unpaid minimum wages and an equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

(c) Grant judgment against Defendants Defendant D.Canela Resources, Gumara Canela, and Daniel Canela, jointly and severally, in favor of all Plaintiffs on their breach of contract claims, and award each Plaintiff their actual damages arising from Defendants' contractual breaches;

(d) Declare Defendant D.Canela Resources an alter ego of Defendants Gumara Canela and Daniel Canela;

(e) Grant judgment against all Defendant, in favor of the Oaxaca Plaintiffs, in the amount of their compensatory damages, for Defendants' violations of the TVPRA as proved, including the promised contractual hourly wage for Plaintiffs' work, punitive damages, and damages for the emotional harm that Defendants' TVPRA violations caused;

(f) Grant judgment against the Defendants D. Canela Resources, Gumara Canela and Daniel Canela, in favor of all Plaintiffs, in the amount of their compensatory

damages, for Defendants' violations of the TVPRA as proved, including the promised

contractual hourly wage for Plaintiffs' work, punitive damages, and damages for the

emotional harm that that the Defendants' violations caused;

(g) Award Plaintiffs pre- and post-judgment interest as allowed by law;

(h) Award Plaintiffs attorney's fees and the costs of this action; and

(i) Award Plaintiffs such further relief, at law or in equity, as this Court deems just and

proper.


This 15th day of November 2021.                    Respectfully submitted,

*/s/ Juan Alberto Barragan-Rangel* _____
Juan Alberto Barragan-Rangel
Lead Counsel
Georgia Bar No.: 421897
E-mail: jbarragan@glsp.org


*/s/ Solimar Mercado-Spencer* _____
Solimar Mercado-Spencer
Georgia Bar No.: 686614
E-mail: smercado-spencer@glsp.org


*/s/ Lisa J. Krisher* _____
Lisa J. Krisher
Georgia Bar No.: 429762
E-mail: lkrisher@glsp.org

Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA 30303
Phone: (404) 463-1633
Fax:    (404) 463-1623

*Attorneys for Plaintiffs*